[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17309
Non-Argument Calendar
_____

Agency No. 13-1034


EMPIRE ROOFING COMPANY SOUTHEAST, LLC,

Petitioner,

Versus


OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION,
SECRETARY, U.S. DEPARTMENT OF LABOR,

Respondents.

_____

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
_____

(October 19, 2017)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Empire Roofing Company Southeast, LLC ("Empire"), petitions for review

of a final decision of the Occupational Safety and Health Review Commission

("Commission"). The Commission concluded that Empire violated standards under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 et seq., when Empire employees rode in an aerial lift without fall protection, in violation of 29 C.F.R. § 1926.453(b)(2)(v). Empire challenges the Commission's conclusion that the language "when working from an aerial lift" in § 1926.453(b)(2)(v) includes riding in an aerial lift. It also challenges the Commission's conclusion that a foreman's knowledge of a violation by two subordinate employees was imputed to Empire, even where the foreman created the violation. After careful review, we deny the petition and affirm the Commission's decision.

The relevant, undisputed facts are these. In April 2013, an OSHA compliance officer inspected a worksite where Empire was installing metal sheeting on the roof of a commercial building. The officer saw Empire's foreman standing in the basket of an aerial lift, elevated between 16 and 20 feet from the ground, without being tied off to the boom or basket. Two other Empire employees were on the roof of the building. The officer learned that the foreman had previously used the lift to transport the two Empire employees up to the roof, but neither the foreman nor the employees used the available safety harnesses during transport in the lift. According to a written statement prepared by the officer and reviewed and signed by the foreman, the foreman said that he "did not

2

have a harness on because he was in a hurry and that he was not going to use the aerial lift very long and he said it was his fault." After a hearing in which Empire contested the citation it had received for the violation, an administrative law judge ("ALJ") agreed with the Secretary's position that an employee is "working from an aerial lift" when he is using the lift as a means of transportation on the worksite, and the Commission affirmed the ALJ's ruling.

Commission decisions "are entitled to considerable deference on appellate review." Fluor Daniel v. Occupational Safety & Health Review Comm'n, 295 F.3d 1232, 1236 (11th Cir. 2002). The Commission's legal determinations will be overturned only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "highly deferential standard" of review. Fluor Daniel, 295 F.3d at 1236. In order to make out a prima facie case of the violation of an OSHA standard, the Secretary must show "(1) that the regulation applied; (2) that it was violated; (3) that an employee was exposed to the hazard that was created; and . . . (4) that the employer knowingly disregarded the Act's requirements." ComTran Grp., Inc. v. U.S. Dep't of Labor, 722 F.3d 1304, 1307 (11th Cir. 2013) (quotation and citation omitted). Empire challenges the Commission's legal determinations regarding the first and fourth requirements.

3

First, we are unpersuaded by Empire's claim that the Commission's decision that the phrase, "when working from an aerial lift," found in § 1926.453(b)(2)(v), includes riding in an aerial lift was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.   In determining the meaning of a statute or regulation, "the first step is to determine whether the statutory language has a plain and unambiguous meaning by referring to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Bautista v. Star Cruises, 396 F.3d 1289, 1295 (11th Cir. 2005) (quotation omitted).  "If the statute's meaning is plain and unambiguous, there is no need for further inquiry." CBS Broad. Inc. v. Echostar Commc'ns Corp., 532 F.3d 1294, 1300–01 (11th Cir. 2008) (quotations omitted).   Where the meaning of the regulatory language is "not free from doubt," however, the reviewing court should give effect to the agency's interpretation so long as it is reasonable, meaning that it "sensibly conforms to the purpose and wording of the regulations."   Martin v. OSHRC, 499 U.S. 144, 149-51 (1991) (quotations omitted).   "[A]n agency's construction of its own regulations is entitled to substantial deference." Id. at 150 (quoting Lyng v. Payne, 476 U.S. 926, 939 (1986)); Brock v. Williams Enters. of Ga., Inc., 832 F.2d 567, 569–70 (11th Cir. 1987).  Id. at 149–51 (quotations omitted).[1]

---

[1]  Our review is of the Commission's decision, but our primary deference is not to the

4

The regulation at issue provides that "[a] body belt shall be worn and a lanyard attached to the boom or basket when working from an aerial lift."  29 C.F.R. § 1926.453(b)(2)(v).  Empire argues that the phrase "when working from" is plain and unambiguous, so the only needed inquiry is the plain meaning of the regulation.  We disagree.  Empire cites no statutory, regulatory, common law, or dictionary definition of the terms "work" or "working," or the phrase "when working from" to demonstrate that the regulation's meaning is plain and unambiguous.  Empire also offers that use of the phrase "when working from" elsewhere in § 1926.453 requires a definition that does not include transport.  In particular, Empire notes that § 1926.453(b)(2)(iii) prohibits "[b]elting off to an adjacent pole, structure, or equipment while working from an aerial lift," and it contends that no worker would belt off while simply riding in the lift.  However, § 1926.453(b)(2)(iii) prohibits, and does not require, belting off while working from an aerial lift.  Even if no worker would belt off while merely riding in the lift, a prohibition against belting off while performing any work-related activities, including transport, from an aerial lift would not create an absurd result.  This

---

Commission's interpretation of the law.  Rather, we must accept as controlling the Secretary's reasonable interpretations of OSHA regulations even if they conflict with the Commission's reading.  Martin, 499 U.S. at 156, 158 ("Giving the Commission the power to substitute its reasonable interpretations for the Secretary's . . . would . . . clearly frustrate Congress' intent to make a single administrative actor accountable for the overall implementation of the Act's policy objectives . . . .") (internal quotation marks omitted).  Here, however, the Secretary and the Commission reached the same conclusion, so we need not parse between the two.

provision does not demonstrate that the meaning of "when working from" clearly and unambiguously excludes riding in an aerial lift.

Because the meaning of the phrase "when working from" is "not free from doubt," we examine the agency's interpretation to determine whether it conforms to the purpose and wording of the regulations. Martin, 499 U.S. at 149–52. For starters, the agency's interpretation that the phrase "when working from an aerial lift" includes transport in an aerial lift conforms to the purpose of OSHA and § 1926.453(b)(2)(v). Id. at 149–52. Indeed, it is undisputed that requiring the use of a belt and lanyard while riding in an aerial lift reduces the risk of falling from the lift during transport. Because the overall purpose of OSHA is "'to assure so far as possible . . . safe and healthful working conditions' for 'every working man and woman in the Nation,'" the Secretary's interpretation undoubtedly conforms to its purpose. Ga. Pac. Corp. v. Occupational Safety & Health Review Comm'n, 25 F.3d 999, 1004 (11th Cir. 1994) (quoting 29 U.S.C. § 651(b)). It further conforms to the purpose of § 1926.453(b)(2)(v), which is to protect employees from the hazard of falling from an aerial lift. See Salah & Pecci Constr. Co., 6 BNA OSHC 1688 (No. 15769, 1978).

The agency's interpretation that an employee is "working from an aerial lift," 29 C.F.R. § 1926.453(b)(2)(v), when he is using the lift to perform a work-related activity -- gaining access to a work location -- also sensibly conforms to the

6

wording of the regulation.  Martin, 499 U.S. at 149–51.  Again, Empire cites no statutory, regulatory, common law, or dictionary definition of the terms "work" or "working," or the phrase "when working from" to suggest that "working from an aerial lift" would not include gaining access to a work location.  Instead, "[i]t is well established that employees are considered to be working any time they are performing work or work-related activities.  Moving from one work location to another is considered a work-related activity."  U.S. Dep't of Labor, Occupational Safety & Health Admin., Change in Policy Regarding Fall Protection While Riding in an Aerial Lift, Standard Interpretation Letter (Jan. 6, 2000).  We cannot say that the language of the regulation precludes this result, nor can we can we say that the agency's interpretation of the regulation was unreasonable.

Because the agency's interpretation of the regulation was reasonable, we must give that interpretation effect.  Martin, 499 U.S. at 149–51.  Accordingly, the Commission's decision, consistent with the Secretary's reasonable interpretation, was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

We also are unconvinced by Empire's argument that the Commission's conclusion that the foreman's knowledge of his subordinates' violation was imputed to Empire was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  "When a corporate employer entrusts to a supervisory

7

employee its duty to assure employee compliance with safety standards, it is reasonable to charge the employer with the supervisor's knowledge actual or constructive of noncomplying conduct of a subordinate." ComTran, 722 F.3d at 1317 (citation omitted).

"The classic situation in which knowledge of a supervisor is imputed to an employer is when the supervisor is on the scene looking on, sees the subordinate employee violating a safety rule, knows there is such a violation, but nonetheless allows it to continue." Quinlan v. Sec'y, U.S. Dep't of Labor, 812 F.3d 832, 841 (11th Cir. 2016). Thus, in the "ordinary case" -- in which the Secretary proves that a supervisor had actual or constructive knowledge of a subordinate employee's violation -- the general rule is that the knowledge of the supervisor is imputed to the employer. ComTran, 722 F.3d at 1307–08 & n.2.

However, the "ordinary case" is distinct from one where the supervisor is the "actual malfeasant" who violates the regulation. Id. at 1308 n.2. As we held in ComTran, where the supervisor himself is the one who engaged in the conduct that violated the regulation, the "supervisor's 'rogue conduct' cannot be imputed to the employer . . . ." Id. at 1316. Here, the foreman did not use a belt and lanyard while riding in the aerial lift. Accordingly, as the Commission determined, the Secretary could not impute the foreman's knowledge of his own misconduct to Empire.

8

Rather, the Commission concluded that the foreman's knowledge of his two subordinates' misconduct was imputed to Empire. This conclusion is consistent with our case law. In Quinlan, we held that when the exposed employees include not only the supervisor, but also one or more subordinate employees, "the general rule should apply in this case -- i.e., that the knowledge of a supervisor of a subordinate employee's violation should be imputed to the employer." Quinlan, 812 F.3d at 841. Empire argues that the instant case is distinguishable from Quinlan because the supervisor and subordinate in Quinlan engaged in the same conduct, but the foreman in this case facilitated the violation by his subordinates. Empire notes that the foreman operated the aerial lift and the subordinates could not have ridden in the lift without the foreman's actions. But although the foreman operated the lift, his subordinates did not violate § 1926.453(b)(2)(v) by merely riding in it. Rather, the violation occurred when the subordinates failed to use fall equipment during the ride. There is no indication in the record that the foreman caused his subordinates' failure to use belts and lanyards. It is undisputed that the foreman was aware that his subordinates did not wear the proper equipment.

Just as in Quinlan, we see "little difference in principle between that classic situation in which knowledge is imputed and the instant situation involving [a] supervisor . . . and subordinate[s] . . . . In both cases, the supervisor sees the violation by the subordinate[s], knows there is a violation, but disregards the safety

rule for one reason or another." Id.  Thus, in light of the considerable deference afforded Commission decisions, we conclude that it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for the Commission to find that the foreman's knowledge was imputed to Empire in this case.  Fluor Daniel, 295 F.3d at 1236.

Accordingly, we deny the petition and affirm the Commission's decision.

**AFFIRMED.**