[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12347

_____

OSHC-0 : 12-1698

JOHN H. QUINLAN,
d.b.a. Quinlan Enterprises,

Petitioner,

versus

SECRETARY, U.S. DEPARTMENT OF LABOR,

Respondent.

_____

Petition for Review from the Occupational Safety
and Health Review Commission

_____

(January 8, 2016)

Before HULL, WILSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Quinlan Enterprises ("Quinlan"), a sole proprietorship that engages in steel erection work, petitions for review of a final decision of the Occupational Safety and Health Review Commission ("Commission"). The Commission held that Quinlan violated standards under the Occupational Safety and Health Act ("OSHA" or the "Act"), 29 U.S.C. §§ 651, et seq., when two of its employees, a foreman and a subordinate employee, were caught working on a concrete block wall and roof platform without fall protection and using a stepladder in an unsafe manner. This appeal presents an issue of first impression in our circuit[1] left open by our decision in ComTran Group, Inc. v. United States Department of Labor, 722 F.3d 1304 (11th Cir. 2013): Is it appropriate to impute a supervisor's knowledge *of a subordinate employee's* violative conduct to his employer under the Act *when the supervisor himself is simultaneously involved in violative conduct*?  Upon close

---

[1]    The Secretary argues that this question is foreclosed by the decision of the former Fifth Circuit in Floyd S. Pike Elec. Contractor, Inc. v. Occupational Safety and Health Review Comm'n, 576 F.2d 72 (5th Cir. 1978). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. We disagree with the Secretary's reading of Floyd. In that case, the former Fifth Circuit affirmed a decision of the Commission finding an employer liable where a foreman and subordinate employee were both working in an unshored trench that did not meet OSHA regulations. Id. at 76–77. However, the court did not rely on a theory of imputed knowledge. Rather, the court applied the approach to proving the prima facie element of employer knowledge presented in Brennan v. Butler Lime and Cement Co., 520 F.2d 1011, 1017 (7th Cir. 1975), in which the Seventh Circuit held that "an employer is responsible if it knew or, with the exercise of reasonable diligence, should have known of the existence of a serious violation." See Floyd, 576 F.2d at 76 (quoting Brennan, 520 F.2d at 1017). That approach to establishing the prima facie element of employer knowledge is distinct from an approach that relies on the agency principle of imputed knowledge. Because the Floyd court did not address the establishment of employer knowledge based on the agency principle of imputation, the instant question is not foreclosed by the former Fifth Circuit's Floyd decision.

2

review of the record, briefs, and the relevant case law, and with the benefit of oral argument, we answer the question presented in the affirmative. Therefore, we deny the petition and affirm the Commission's decision.

## I.    BACKGROUND

### A. The Underlying Incident and Citations

In February 2012, Quinlan was engaged as the steel erection subcontractor at a construction worksite at the Dougherty High School in Albany, Georgia. Kinney Construction ("Kinney") was the general contractor at the worksite. Kinney subcontracted with Gerdau AmeriSteel, a company engaged in structural steel fabrication, which then subcontracted to Quinlan. Quinlan has approximately thirty employees, two of whom—Miguel Pacheco and Humberto Vargas—were working at the Dougherty High School worksite on February 9, 2012.

On February 9, Pacheco and Vargas were assigned to anchor clips inside the building. This work involved installing plates or clips on a concrete block wall, welding clips underneath beams on the roof, and putting in epoxy bolts. The same day, an OSHA Compliance Safety and Health Officer initiated a scheduled on-site inspection. The inspector observed and photographed Pacheco and Vargas working on the edge of a 15-foot high concrete block wall without fall protection. Additionally, the inspector observed a ladder that was not secured from slipping when in the closed position. As a result of the inspection, the Secretary issued

3

Quinlan a three-item Citation and Notification of Penalty on August 7, 2012. The first item alleged a serious violation of 29 C.F.R. § 1926.501(b)(1).[2] The third item alleged a serious violation of 29 C.F.R. § 1926.1053(b)(4).[3] The second item was later vacated and is not relevant to this petition for review. The total amount of the proposed penalties for the three alleged violations was $11,400.00.

B. The ALJ and OSHRC Proceedings

After a hearing, the taking of trial depositions, and the submission of post-hearing briefs, Administrative Law Judge Sharon D. Calhoun issued a Decision and Order on July 22, 2013. Sec'y of Labor v. Quinlan Enters., OSHRC Docket No. 12-1698, 2013 WL 5505283, at *3–16 (Occupational Safety Health Review Comm'n July 22, 2013). The ALJ Order affirmed Item 1 and 3 of the Citation and assessed a total penalty of $7,200.00. Quinlan filed a petition for discretionary review with the Commission on August 12, 2013, arguing that it was not liable for any violation because Pacheco and Vargas were not Quinlan's employees at the time of exposure. After the ALJ Order was issued, this Court decided ComTran, in which we held that "the Secretary does not carry her burden and establish a prima facie case with respect to employer knowledge merely by demonstrating that a

---

[2]    29 C.F.R. §1926.501(b)(1) provides: "Unprotected sides and edges. Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems."

[3]    29 C.F.R. §1926.1053(b)(4) provides: "Ladders shall be used only for the purpose for which they were designed."

supervisor engaged in misconduct." 722 F.3d at 1316. The ALJ Decision and Order was then directed for review before the Commission and the Commission issued a Remand Order to the ALJ to consider Quinlan's arguments in his petition for discretionary review as well as the applicability of this Court's intervening decision in ComTran to the two violations. Quinlan Enters., 24 BNA OSHC 1154 (No. 12-1698, 2013) (remand order).

On remand from the Commission, Judge Calhoun made extensive findings and concluded that Pacheco and Vargas were workers employed by Quinlan at the time of the violations. Quinlan Enters., 24 BNA OSHC 2185, 2186–91 (No. 12-1698, 2014) (decision and order on remand) (ALJ). The ALJ also distinguished ComTran, stating that ComTran "only applies to scenarios where the supervisor is acting alone" and not to situations where the supervisor has knowledge of misconduct by his subordinates. Id. at 2192. Accordingly, the ALJ concluded that ComTran did not alter the dispositions of the affirmed violations. Id. at 2193. Quinlan again sought discretionary review from the Commission but was denied. Thus, Judge Calhoun's decision became a final order of the Commission on March 31, 2014. This petition for review followed.

## II.  DISCUSSION

This Court outlined the statutory and regulatory scheme underlying violations of OSHA standards in ComTran, 722 F.3d at 1306–08. As we described:

5

> Under the law of our circuit, the Secretary will make out a prima facie case for the violation of an OSHA standard by showing (1) that the regulation applied; (2) that it was violated; (3) that an employee was exposed to the hazard that was created; and importantly, (4) that the employer "knowingly disregarded" the Act's requirements.

Id. at 1307. This appeal concerns only the third and fourth elements of the prima facie case.

To satisfy the third element, the Secretary bears the burden of showing that the cited respondent is the employer of the exposed workers at the site. The Act defines employee as follows: "Employee means an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. § 652(6). In determining whether the Secretary has satisfied its burden, the Commission applies the control-based test set forth in Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318 (1992):

> To decide whether the party in question was an employer under common law, the Darden Court looked primarily to the hiring party's right to "control the manner and means by which the product [was] accomplished." Factors pertinent to that issue include "the skill required for the job, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits and the tax treatment of the hired party." Darden, 503 U.S. at 322, citing Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989). While no single factor under Darden is determinative, the primary focus is whether the putative employer controls the workers.

6

Quinlan Enters., 24 BNA OSHC 2185, 2190–91 (No. 12-1698, 2014) (ALJ) (decision and order on remand) (citing Allstate Painting & Contracting Co., 21 BNA OSHC 1033, 1035 (No. 97-1631 & 97-1727, 2005)). As the Supreme Court has summarized, the "principal guidepost" in the Darden test is the "extent of control" the employer exercises over the employee. Clackamas Gastroenterology Assoc., P.C. v. Wells, 538 U.S. 440, 448 (2003). Three other circuits have affirmed the application of the Darden test to OSHA violations. See Slingluff v. Occupational Safety & Health Review Comm'n, 425 F.3d 861, 867–69 (10th Cir. 2005); IBP, Inc. v. Herman, 144 F.3d 861, 865 (D.C. Cir. 1998); Loomis Cabinet Co. v. Occupational Safety and Health Review Comm'n, 20 F.3d 938, 941–42 (9th Cir. 1994). One circuit has ruled that Darden's reasoning is not directly applicable to the Act. See Sec'y of Labor v. Trinity Indus., Inc., 504 F.3d 397, 402 (3d Cir. 2007) ("[Darden] was decided under ERISA and has no impact on the question of whether the scope of the OSH Act is broad enough to cover workers who are not employees under the common law definition."). The parties here assume in their briefs that the Darden test applies. Therefore, we apply the Darden test here without deciding explicitly whether the Commission's interpretation of 29 U.S.C. § 652(6) is permissible.

To satisfy the fourth element of a prima facie case, the Secretary must prove the employer had knowledge of the violation. As we described in ComTran, the Secretary may do this in two different ways:

> First, where the Secretary shows that a supervisor had either actual or constructive knowledge of the violation, such knowledge is generally imputed to the employer. . . . An example of actual knowledge is where a supervisor directly sees a subordinate's misconduct. . . . An example of constructive knowledge is where the supervisor may not have directly seen the subordinate's misconduct, but he was in close enough proximity that he should have. . . . In the alternative, the Secretary can show knowledge based upon the employer's failure to implement an adequate safety program, with the rationale being that—in the absence of such a program—the misconduct was reasonably foreseeable.

Comtran, 722 F.3d at 1307–08 (citations omitted). In this case, only the first way of proving employer knowledge—imputing knowledge from a supervisor—is at issue.

Appeals from final decisions of the Commission are reviewed directly by the courts of appeals. 29 U.S.C. § 660(a). On review, Commission decisions are entitled to considerable deference. The Commission's findings of fact must be upheld if they are "supported by substantial evidence on the record considered as a whole." Id. at 1307. We have held that "[s]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing Richardson v. Perales, 402 U.S. 389, 401 (1979)). The Commission's conclusions of law, meanwhile, must be upheld as long as they are

8

not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The Commission and its ALJs are bound to follow the law of the circuit to which the case would most likely be appealed. ComTran, 722 F.3d at 1307.

With the foregoing standards of review in mind, we will now turn to the arguments in this particular case.

In his petition for review, Quinlan makes three arguments. First, Quinlan argues that the Commission erred in finding that Pacheco and Vargas were employees of Quinlan at the time of the exposure. Second, Quinlan argues that the Commission erred in finding that Pacheco was a supervisor. Third, Quinlan argues that our recent decision in ComTran bars the imputation of Pacheco's knowledge of Vargas' violative misconduct to Quinlan because Pacheco was simultaneously involved in violative misconduct. In light of the highly deferential standard for reviewing Commission decisions, and based on our review of the record, Quinlan's arguments cannot succeed.

A.    Pacheco and Vargas Were Employees of Quinlan at the Time of Exposure

There is ample evidence to support the Commission's finding of fact that, at the relevant time, Pacheco and Vargas were employees of Quinlan and not of Kinney. The Commission made findings with respect to the relevant Darden

9

factors and concluded that, at the relevant time, "Quinlan had every indicia of control over Pacheco and Vargas." Id. at 2191.

The only non-frivolous aspect of Quinlan's challenge to the Commission's finding that Pacheco and Vargas were Quinlan employees is the argument that, at the direction of Charles Hall (Kinney's superintendent), Pacheco and Vargas performed work for Kinney, and, therefore Pacheco and Vargas temporarily became Kinney employees rather than Quinlan employees. Contrary to Quinlan's argument, there is ample evidence to support the Commission's finding that Charles Hall did not commandeer Pacheco and Vargas to work for Kinney. The evidence is somewhat closer with respect to the Commission's determination that the weight of the evidence failed to establish that the work Pacheco and Vargas were engaged in at the time of the inspection was outside the scope of Quinlan's contract. Id. In this regard, we are not persuaded that Quinlan has demonstrated that the Commission's finding lacks substantial supporting evidence. The strongest evidence presented by Quinlan was the testimony of Quinlan himself and the testimony of Hanniford. Both were discredited by the Commission. Supporting the Commission's finding is the fact that Pacheco, Quinlan's supervisor on the scene, apparently thought he had authority to perform the work and that the work was Quinlan's. Moreover, even if the work were technically outside the scope of Quinlan's contract, it is clear that the work was closely related to, even if not

10

actually within, the technical confines of the contractual scope of work. Quinlan cites no authority for the proposition that such a minor deviation from the contractual scope of work would operate to destroy the clear employment relationship between Quinlan and its two employees.

Even if the work were not technically within Quinlan's contractual responsibilities, we believe that, as a matter of agency principles and as a matter of common sense, Pacheco, as Quinlan's supervisor on the site, would have authority to make such minor deviations in order to cooperate with the general contractor. This would be in the employer's best interest as a matter of common sense, and Quinlan never specifically instructed its employees on how to interact with the general contractor on the work site.

For the foregoing reasons, we reject Quinlan's challenge to the Commission's finding of fact that, at the relevant time, Pacheco and Vargas were employees of Quinlan.

B.      Pacheco Was a Supervisor at the Time of Exposure

Similarly, we reject Quinlan's challenge to the Commission's finding of fact that, at the relevant time, Pacheco was a supervisor on the site on behalf of Quinlan. Quinlan Enters., 24 BNA OSHC at 2192 n.1. As the Commission indicated, the evidence that Pacheco was Quinlan's supervisor on that day was

11

"overwhelming." Id. Quinlan's challenge to that fact finding is wholly without merit and thus is summarily rejected.

C.    Imputation of a Supervisor's Knowledge of a Subordinate Employee's Misconduct when Supervisor is Simultaneously Involved in Misconduct.

We turn now to Quinlan's argument that the Commission erred by misapplying our decision in ComTran.

In ComTran, this Court reviewed a decision of the Commission finding that ComTran Group, a communications utilities company, violated the Act when one of its foremen was caught digging in a six-foot deep trench with an unprotected five-foot high spoil pile at the edge of the excavation. Comtran, 722 F.3d at 1308–09. ComTran conceded its foreman had violated the cited standards but asserted that the foreman's "rogue" misconduct could not be attributed to ComTran because the Secretary had failed to show that ComTran had knowledge of the violation. The Commission disagreed, finding that ComTran had knowledge of the violated standards by way of imputation.[4] Because the foreman had actual knowledge of the excavation and spoil pile—the foreman himself had dug the excavation and placed the spoil pile at its edge—and because the foreman was a supervisory employee, the Commission imputed the foreman's knowledge of his own violative conduct to ComTran and thereby found the Secretary had satisfied her burden of proving

[4]    As in this case, the ALJ's order in ComTran became a final decision of the Commission when the Commission denied discretionary review. See Comtran, 722 F.3d at 1311.

employer knowledge. ComTran Grp., Inc., 23 BNA OSHC 2143, 2148 (No. 11-0646, 2011) (ALJ).

On petition for review, we reversed the Commission. We acknowledged that in the "ordinary case"—in which the Secretary proves that a supervisor had actual or constructive knowledge of a subordinate employee's violation—the general rule is that the knowledge of the supervisor is imputed to the employer. See Comtran, 722 F.3d at 1307–08 & n.2. However, we carved out an exception to the general rule where the supervisor himself is the one who engaged in the conduct that violated the Act and the issue is whether to impute to the employer the supervisor's knowledge of his own misconduct. See id. at 1316. In that situation, we held that "the Secretary does not carry her burden and establish a prima facie case with respect to employer knowledge merely by demonstrating that a supervisor engaged in misconduct." Id. Rather, in the situation where the supervisor's knowledge is of his own conduct in violation of the Act, "employer knowledge must be established, not vicariously through the violator's knowledge, but by either the employer's actual knowledge, or by its constructive knowledge based on the fact that the employer could, under the circumstances of the case, foresee the unsafe conduct of the supervisor [that is, with evidence of lax safety standards]." Id. (citing W.G. Yates & Sons Constr. Co., Inc. v. OSHRC, 459 F.3d 604 (5th Cir. 2006)). We reasoned that to impute the supervisor's knowledge in such a circumstance would

13

be "fundamentally unfair" because it would release the Secretary from her burden

of proving employer knowledge. Id. at 1317. Such a result, we held, "would be

arbitrary, capricious, and not in accordance with the law." Id. at 1318.[5]

In the instant case, Quinlan argues that our holding in ComTran should be

extended to prevent the imputation of a supervisor's knowledge of a subordinate

employee's violative conduct to his employer when the supervisor is

simultaneously involved in the same violative misconduct. In such a situation,

Quinlan argues, the employer loses his "eyes and ears" and the supervisor's

knowledge should not be imputed, regardless of whether the relevant knowledge is

knowledge of his own conduct or knowledge of a subordinate employee's conduct.

Quinlan relies heavily on L.R. Willson & Sons, Inc. v. OSHRC, 134 F.3d

1235 (4th Cir. 1998). There, the Fourth Circuit addressed a violation in which the

underlying facts involved both a supervisor (Manley) and a subordinate employee

(McVay) who were observed working on structural steel more than 80 feet above

the ground without the fall protection required by regulation. Id. at 1237. The

Commission affirmed a violation based on the theory that "[i]n establishing that an

---

[5]     Our holding in ComTran effectively shifts to the Secretary an obligation to prove
employer knowledge in a manner that "closely mirror[s]" what an employer (in the ordinary case
where supervisor knowledge of a subordinate employee's misconduct is imputed) would
ordinarily have to prove to make the affirmative defense of unforeseen employee misconduct –
e.g., prove that the employee misconduct was not foreseeable and was not preventable. See
Yates, 459 F.3d at 609 n.7.

14

employer knew of the Act's requirements and knowingly disregarded them, the knowledge and conduct of a supervisory employee may be imputed to the employer." L.R. Willson & Sons, Inc., 17 BNA OSHC 2059, 2063 (No. 94-1546, 1997). On petition for review, the Fourth Circuit reversed the Commission's decision because imputing a supervisor's knowledge of his own violation impermissibly relieved the Secretary of her burden of proving the prima facie case and shifted the burden of proof to the company. L.R. Willson, 134 F.3d at 1240–41. In so holding, it is not clear whether the opinion of the Fourth Circuit actually addressed and decided whether a supervisor's knowledge of a subordinate's conduct may be imputed when the supervisor and subordinate are simultaneously involved in violative conduct. The opinion appears to refer to the issue when it says:

> The Secretary contends that Ocean Electric should not apply here, as Manley was accompanied by McVay, who was not a supervisory employee. However, in so doing the Secretary ignores the fact that the ALJ in this case found the *prima facie* case of a violation because of Manley's status, and then placed on Willson the burden of rebutting with the "affirmative defense" of employee misconduct, and the Commission affirmed.

Id. at 1240 n.28. In other words, the Fourth Circuit may have declined to address the issue because the ALJ and the Commission shifted the burden of proof merely "because of Manley's status." In any event, it is not clear whether the Fourth Circuit understood the force of the distinction between a supervisor acting alone in

15

violation of the Act and a supervisor engaging in that misconduct while simultaneously supervising a subordinate who is also engaged in such misconduct. To the extent that the Fourth Circuit's decision is inconsistent with our holding today, we decline to follow it because it contains little or no analysis and therefore carries little persuasive weight.[6] For the reasons that follow, we believe that the general rule should apply in this case—i.e., that the knowledge of a supervisor of a subordinate employee's violation should be imputed to the employer.

In our view, the situation with respect to the non-supervisory subordinate employee in this case is analogous to the ordinary situation in which imputation is clearly established. The classic situation in which knowledge of a supervisor is imputed to an employer is when the supervisor is on the scene looking on, sees the subordinate employee violating a safety rule, knows there is such a violation, but

---

[6]     Other cases cited by the parties as involving underlying facts of a supervisor and a subordinate employee engaging in simultaneous misconduct are inapposite. As noted above, the former Fifth Circuit case of Floyd S. Pike did not rely on the theory of imputed knowledge.  The Fifth Circuit case of W. G. Yates & Sons Constr. Co. v. OSHRC, 459 F.3d 604 (5th Cir. 2006), involved a foreman engaged in one violation and two subordinate employees simultaneously engaged in a different violation. However, the employer appealed to the Fifth Circuit only the violation involving the foreman. The Fifth Circuit made no ruling with respect to the violation involving the two subordinate employees, and made no ruling with respect to the issue before us. However, dicta in Yates indicates that the situation of the two subordinate employees simultaneously engaging in the slightly different violation in the presence of the foreman would constitute the "ordinary context" in which the foreman's knowledge of the two subordinate employees' slightly different violation would be imputed to the employer, and thus the burden would properly be on "the employer to establish its affirmative defense of unforeseen employee misconduct." Id. at 609 n.7.  Our ComTran opinion cited with approval this very footnote 7 of the Yates opinion. ComTran, 722 F.3d at 1308 n.2.

16

nonetheless allows it to continue. We see little difference in principle between that classic situation in which knowledge is imputed and the instant situation involving supervisor Pacheco and subordinate Vargas. In both cases, the supervisor sees the violation by the subordinate, knows there is a violation, but disregards the safety rule for one reason or another. We see little or no difference between the classic situation in which the supervisor sees the violation by the subordinate and disregards the safety rule, for example to expedite the job; and the instant situation in which the supervisor sees the violation and pitches in and works beside the subordinate to expedite the job.

The instant case is unlike the situation in ComTran involving a supervisor's knowledge of his own misconduct. In that circumstance, imputation was improper and unfair because it had the effect of relieving the Secretary of her burden of proving employer knowledge. "[I]f the Secretary is permitted to establish employer knowledge solely with proof of the supervisor's misconduct—notwithstanding that the employer did not know, and could not have known, of that misconduct—then the Secretary would not really have to establish knowledge at all. The mere fact of the violation itself (element 2) would satisfy the knowledge prong (element 4)." ComTran, 722 F.3d at 1317. In contrast, the situation here involving a supervisor and a subordinate employee who are simultaneously involved in violative misconduct does not present the same problem. Proof of the subordinate

17

employee's misconduct does not by itself prove employer knowledge of such. The Secretary still bears the burden of proving employer knowledge, whether through a supervisor's actual or constructive knowledge of the subordinate employee's misconduct or through the employer's actual or constructive knowledge of the subordinate employee's misconduct, for example, by failure to implement an adequate safety program. Here, the Secretary carried that burden by proving that supervisor Pacheco had actual knowledge of subordinate employee Vargas' violative misconduct. Thus, the "fairness" concern which was at issue in the ComTran case is not present in the instant situation.

Indeed, we believe there is dicta in the ComTran opinion itself which supports our holding:

> We say that a supervisor's knowledge is "generally imputed to the employer" because that is the outcome in the ordinary case. The "ordinary case," however, is where the supervisor knew or should have known that the subordinate employees were engaged in misconduct.

Id. at 1308 n.2; see also id. at 1317 (drawing a "distinction between a supervisor's knowledge of a subordinate's misconduct (which everyone agrees is imputable to the employer) and knowledge of his own misconduct (which a clear majority of circuits have held is not [imputed]")). Indeed, ComTran, in this same footnote 2 at page 1308, cited with approval footnote 7 of the Fifth Circuit Yates opinion as noting an example of the "ordinary case." Yates, 459 F.3d at 609 n.7. In that

18

footnote 7, the Yates opinion stated in dicta that the violation that was not appealed to the Fifth Circuit—i.e., the simultaneous violation by the two subordinate employees in the presence of the foreman—would constitute the "ordinary context" in which the "supervisor's knowledge . . . is imputable." The only difference between the facts underlying the instant case and the violation which the Yates dicta said would be imputed is that the violation of the two subordinates in Yates was slightly different from the simultaneous violation of their foreman, whereas the violation of foreman Pacheco in our case was identical to the violation of Vargas. However, we can perceive no difference in principle between the two situations. Although dicta, we believe ComTran's citation with approval of footnote 7 of the Yates opinion is an indication that the ComTran panel did not contemplate an extension of its holding to the very different situation in this case.

We conclude that the instant situation is more like the "ordinary case" than like the exceptional case addressed in ComTran. As noted above, there is little or no difference between this case and the classic case in "which everyone agrees [knowledge] is imputable to the employer." ComTran, 722 F.3d at 1317. In both situations, the employer has "entrust[ed] to a supervisory employee its duty to assure employee compliance with safety standards." Id. (citation omitted). Moreover, application to the instant facts of the established rule is entirely consistent with well-established agency principles. Quinlan has not suggested, nor

could it, that Pacheco's disregard of Quinlan's safety rules disrupted his agency relationship with Quinlan.

For the foregoing reasons, Quinlan has failed to persuade us that the exception to the general rule of imputation we carved out in ComTran should be expanded to encompass the instant situation.

## III. CONCLUSION

For the reasons stated above, we conclude that the Commission's findings of fact were supported by substantial evidence on the record considered as a whole and the Commission's conclusions of law were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Therefore, we deny the petition and affirm the Commission's decision.

AFFIRMED.