**PEPPER CONTRACTING SERVICES,**
Petitioner,

v.

**OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, U.S.** Department of Labor, Respondents.

No. 16–10302
Non–Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 07/25/2016

John Maxwell Hament, Lindsey Dunn, Williams Parker Harrison Dietz & Getzen, Sarasota, FL, for Petitioner Pepper Contracting Services.

John Cerveny, Occupational Safety and Health Review Commission, Washington, DC, for Respondent Occupational Safety and Health Administration.

Scott Glabman, Charles F. James, Hilda Solis, U.S. Department of Labor Office of the Solicitor, Washington, DC, Stanley Keen, Office of the Solicitor, US DOL, Atlanta, GA, for Respondent U.S. Department of Labor.

Before HULL, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Pepper Contracting Services, Inc. ("Pepper") seeks review of a final order of the Occupational Safety and Health Review Commission ("Commission"). The Secretary of the Commission issued Pepper a citation for a serious "general duty clause" violation under the Occupational Safety and Health Act of 1970 ("OSHA"), codified at 29 U.S.C. §§ 651–678. The Commission subsequently affirmed the citation in a final order. After review of the record and briefs, we affirm.

## I. BACKGROUND

This case concerns a fatal accident that occurred on October 29, 2013, at a highway construction worksite supervised by Pepper. The parties largely agree on the facts.

Pepper is a general construction contractor located in Tampa, Florida. Pepper's business, at least in part, consists of conducting milling operations on roads, which involves removing existing road surface material with a milling machine and then adding new road base and asphalt layers. The milling operation is performed using a convoy of vehicles moving in tandem, which consists of a milling machine and a series of dump trucks. As the milling machine moves forward removing the existing asphalt layer, a chute extending forward from the front of the machine deposits milling debris into a dump truck in front of the machine using a conveyor. Once the dump truck is filled, it leaves the vehicle convoy to dump the milled material, and another dump truck backs up to take its place in front of the milling machine. Dump trucks continuously cycle through, alternatingly filling and dumping their loads, which allows the milling process to proceed without interruption.

On October 29, 2013, Pepper's milling team consisted of three of Pepper's own employees as well as several employees supplied by two subcontractors, Turtle Southeast Milling and Jason's Hauling. The Pepper employees included foreman Terry Infinger, operator Robert Bacon, and decedent Alex Diaz. Jason's Hauling provided several dump trucks, two of which were driven by Yonnesly Carmenate and Alejandro Perez, both independent contractors of Jason's Hauling.

That day, the milling operation's work focused on the eastside of Dale Mabry Highway, which runs north to south. The operation started around 7:30 am on a portion of Dale Mabry Highway located south of Tampa Bay Boulevard, which runs east to west. Later that morning, as the convoy progressed northward on Dale Mabry Highway, it crossed Tampa Bay Boulevard to continue work on the road extending northward.

After crossing Tampa Bay Boulevard, the convoy temporarily ceased operations to allow the milling machine foreman, Turtle Southeast employee David Hollister, to reset the milling machine. Around the same time, foreman Infinger and decedent Diaz walked ahead of the convoy to the location of a Verizon pole marker along the roadside of Dale Mabry Highway. The previous week, the milling machine had clipped a telecommunications box overgrown with grass located next to a similar

Verizon pole marker. This time foreman Infinger wanted to check whether there was another such box and, if so, fully expose it so that it would be visible to the milling machine operator.

Sure enough, foreman Infinger found a partially exposed telecommunications box next to the Verizon pole and began uncovering the front edge of the box using a shovel. Foreman Infinger showed decedent Diaz how to properly expose the box, and then Infinger told Diaz to finish uncovering it. Foreman Infinger anticipated that it would only take about three to four minutes for decedent Diaz to finish exposing the box. Infinger left Diaz to complete the task and walked back to the milling machine. Diaz was wearing a hard hat and a safety vest. Foreman Infinger did not tell any of the dump truck drivers that Diaz was up ahead of the convoy working on the telecommunications box.

Sometime after the milling convoy had crossed Tampa Bay Boulevard and after decedent Diaz began exposing the box, the milling operation resumed. The milling convoy was moving at its usual pace of 10 feet per minute or under three miles per hour. At this point, Carmenate of Jason's Hauling was driving the dump truck positioned directly in front of the milling machine, and Perez of Jason's Hauling was positioned directly in front of Carmenate's dump truck waiting to take Carmenate's place in the convoy.

A couple of minutes after the milling convoy resumed, it had only moved about 10 to 15 feet when Carmenate honked his horn because he noticed that his dump truck was too close to Perez's dump truck. Perez had not been paying attention, and upon hearing Carmenate's honk, Perez sped forward down the road and struck decedent Diaz, who was still standing by the telecommunications box. From where Perez responded to Carmenate's honk, Perez's truck sped forward a distance of 83 to 88 feet before he struck Diaz.[1] Diaz subsequently died as a result of his injuries.

On November 18, 2013, the Commission began an investigation into the incident after being notified of Diaz's death. Compliance Specialist Gerardo Ortiz ("Investigator Ortiz") headed up that investigation. On April 24, 2014, upon the conclusion of the investigation, the Secretary of the Commission issued Pepper a citation for a serious "general duty clause" violation under section 5(a)(1) of OSHA. 29 U.S.C. § 654(a)(1). The citation alleged that "employees were exposed to the hazard of being struck by vehicular traffic inside a work zone," and as a result, Pepper committed a workplace violation because it "did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees."

According to Investigator Ortiz's report, the absence of "Internal Traffic Control Plans" and "a flagger to clear out of the path of dump trucks before the truck started to move forward" were contributing factors to the October 29, 2013, accident.

## II. PROCEDURAL HISTORY

After the Secretary of the Commission issued a citation to Pepper on April 24, 2014, Pepper filed a Notice of Contest on April 30, 2014. Thereafter, on June 19, 2014, the Secretary of the Commission filed a complaint against Pepper before the Commission.

---

1. Neither Pepper nor the Commission contests the ALJ's fact-finding as to this 83–to–88 foot distance.

A hearing was held before Administrative Law Judge ("ALJ") John Gatto on January 27–28, 2015. At the hearing, numerous employees from Pepper's October 29, 2013, worksite testified, as well as Investigator Ortiz. Among other things, Investigator Ortiz testified that decedent Diaz "was in the path of the machinery and the machine operator had not been notified of the presence and the milling . . . should have been told to stop."

ALJ Gatto issued a 22–page order on November 2, 2015, in which he affirmed the citation. While ALJ Gatto found some of Investigator Ortiz's testimony to be not credible, he determined that Ortiz's testimony "regarding the existence of a struck-by hazard and the inadequacy of Pepper's internal traffic control plan" to be plausible, consistent, and corroborated with credible evidence in the record, and he afforded it "considerable weight." The ALJ concluded that a hazard had existed on Pepper's worksite on the day of the accident. While it discredited the Secretary's theory that decedent Diaz had been standing in Perez's blind spot at the time of the accident, ALJ Gatto nevertheless found that the citation sufficiently put Pepper on notice of the alleged struck-by hazard, and ALJ Gatto explained:

> [T]here is no dispute that the decedent was assigned to work near the Verizon pole that served as a marker for the telecommunications box, which was in the path of the milling operation. This in and of itself presented the potential for harm. The struck-by hazard was a preventable consequence of a work operation over which Pepper can reasonably be expected to exercise control. Therefore, the Secretary has established the existence of a struck-by hazard.

(citation omitted).

On November 24, 2015, Pepper filed a Petition for Discretionary Review with the Commission. The matter was not directed for review by the Commission, and the ALJ's decision became a final order of the Commission on December 7, 2015. Pepper's petition for review to this Court followed.

## III. DISCUSSION

We afford Commission decisions "considerable deference" on review. Quinlan v. Sec'y, U.S. Dep't of Labor, 812 F.3d 832, 837 (11th Cir. 2016). The Commission's fact-findings must be upheld "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Quinlan, 812 F.3d at 837 (quotation marks omitted). "The Commission's conclusions of law, meanwhile, must be upheld as long as they are not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with . . . law.' " Id. (quoting 5 U.S.C. § 706(2)(A)). The Commission and its ALJs must follow the law of the circuit to which the case would most likely be appealed. ComTran Group, Inc. v. U.S. Dep't of Labor, 722 F.3d 1304, 1307 (11th Cir. 2013).

An employer commits a general duty clause violation when he fails to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1).

To prove an employer's "serious violation of OSHA's general duty clause," the Secretary must establish that "(1) the employer failed to render its work place free

of a hazard; (2) the hazard was recognized; ... (3) the hazard caused or was likely to cause death or serious physical harm" and "(4) the hazard [was] preventable." Ga. Elec. Co. v. Marshall, 595 F.2d 309, 320–21 (5th Cir. 1979) (quotation marks and internal citations omitted).[2]

This case concerns only the first element, the existence of a hazard in the workplace. Pepper points us to Commission authority that a "hazard" consists of conditions or practices deemed unsafe over which an employer can reasonably be expected to exercise control. Morrison-Knudsen Co./Yonkers Contracting Co., A Joint Venture, 16 BNA OSHC 1105, 1121 (No. 88–572, 1993) (citing Pelron Corp., 12 BNA OSHC 1833, 1835–36 (No. 82–388, 1986)). Furthermore, for purposes of proving "employee exposure to a hazard," the Secretary must establish that "it is reasonably predictable, either by operational necessity or otherwise (including inadvertence), that employees have been, are, or will be in the zone of danger." D.T. Constr. Co., 19 BNA OSHC 1305, 1308 (No. 99–0147, 2000) (ALJ). Additionally, Pepper highlights Commission authority that the Secretary can prove employee exposure to a hazard by showing either an employee's actual exposure to a hazard in a zone of danger or that it was reasonably predictable that an employee would have access to a hazard in a zone of danger. Nuprecon LP, 23 BNA OSHC 1817, 1818–19 (No. 08–1307, 2012).

■ On appeal, Pepper primarily challenges the Commission's determination that a hazard existed on its worksite. Pepper argues that the Secretary cannot prove a general duty clause violation without proving the existence of a "struck-by" hazard and contends that the Secretary's evidence before the ALJ proving such a

hazard was insufficient. Furthermore, Pepper argues that certain of the ALJ's fact-findings were inconsistent with its conclusion that the Secretary proved decedent Diaz was exposed to a struck-by hazard.

Our review of the Commission's final, thorough 22-page order confirms that there was no reversible error in its decision. The ALJ's order explained, "[T]here is no dispute that the decedent was assigned to work near the Verizon pole that served as a marker for the telecommunications box, which was in the path of the milling operation. This in and of itself presented the potential for harm." The ALJ's order concluded that the Secretary had established the existence of a hazard.

The ALJ's hazard conclusion was supported by the testimony of numerous Pepper-worksite employees—including foreman Infinger, operator Bacon, dump truck driver Carmenate, and the milling machine foreman—most of whom the ALJ found to be credible, straightforward, and trustworthy witnesses. In sum, their testimony established three critical facts: (1) Pepper left decedent Diaz to perform a task while standing in the path of the milling convoy without any supervisory protocol to account for his whereabouts as the milling convoy prepared to start again; (2) Pepper permitted the milling convoy to begin operating again while Diaz was still working and standing in the convoy's path; and (3) Pepper did not inform any of the dump truck drivers that Diaz was located in their path. We have no difficulty concluding the ALJ's evidentiary findings as to his hazard determination were "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a).

■ Pepper argues that, in reaching his hazard determination, the ALJ failed to

---

**2.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

consider such things as "the significance of Alex Diaz's distance from the hazard, the time anticipated for him to complete his task, or the slow pace of the convoy." Pepper maintains that Diaz was neither actually exposed to a struck-by hazard at the moment Carmenate honked his horn, given Diaz's distance from the slow-moving convoy, nor was it reasonably predictable that Diaz would be exposed to such a hazard, given that Pepper could not reasonably anticipate or control Perez's sudden careless behavior. Thus, the ALJ's hazard conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Pepper's arguments fail. For sure, it may not <u>always</u> be true that where a contractor positions an employee 83 feet in front of and in the path of a milling convoy, a hazard necessarily exists. But, as discussed above, here such additional facts were shown as (1) Pepper's lack of supervisory protocol to account for Diaz's whereabouts at the time the milling operation resumed, (2) Pepper's authorizing the milling operations to resume, and (3) Pepper's failure to inform the truck drivers of Diaz's location.

The ALJ could reasonably determine that the facts of this case showed that Pepper's placement of Diaz in the path of a milling convoy led by dump trucks capable of moving at a high rate of speed actually exposed Diaz to a hazard in a zone of danger or, at the least, made it reasonably predictable that he would imminently be exposed to such a hazard in a zone of danger. See <u>Nuprecon</u>, 23 BNA OSHC at 1818–19. That is especially true where Pepper's inadvertence in resuming the operation while Diaz was in his assigned work location is what put Diaz at risk, as Diaz was left in the path of a moving convoy. See <u>D.T. Constr.</u>, 19 BNA OSHC at 1308. Furthermore, Pepper could reasonably be expected to exercise control over its worksite, including the path of the milling convoy. See <u>Morrison–Knudsen</u>, 16 BNA OSHC at 1121. In light of the Commission authority Pepper itself highlights, we cannot say the Commission's hazard determination was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Given the "considerable deference" we afford Commission decisions on review, we affirm. <u>Quinlan</u>, 812 F.3d at 837.

**AFFIRMED.**[3]

**3.** We find Pepper's remaining arguments lack merit.