**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-12346

————————————

FAMA CONSTRUCTION, LLC,

*Petitioner,*

*versus*

U.S. OCCUPATIONAL SAFETY AND HEALTH
REVIEW COMMISSION,

*Respondent.*

————————————

Petition for Review of a Decision of the
Occupational Safety and Health Review Commission
Agency No. 19-1467

————————————

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

PER CURIAM:

Petitioner Fama Construction, LLC provides roofing services for building projects. Fama regularly hires the same group of subcontractors to perform the roofing work. Since 2013, the

Occupational Safety and Health Administration ("OSHA") has in-spected Fama worksites at least seven times and discovered OSHA safety violations each time. On multiple occasions, OSHA, apply-ing its policies for jobsites with multiple employers, has concluded that Fama qualifies as a "controlling employer" and cited Fama for its subcontractors' violations of OSHA safety standards.

The petition before us arises from an incident in 2019 when an OSHA inspector who had previously issued citations to Fama drove by a residential construction site and saw two of Fama's sub-contractors working without proper fall protection and hardhats. The inspector issued citations for these violations to Fama as a con-trolling employer.

Fama contested these citations in agency proceedings before the Occupational Safety and Health Review Commission (the "Commission"). An administrative law judge ("ALJ") granted sum-mary judgment to the Secretary of the United States Department of Labor (the "Secretary"), concluding that Fama was a controlling employer and breached its duty to take reasonable measures to en-sure its subcontractors comply with OSHA safety requirements. The Commission declined to review Fama's petition for discretion-ary review, and the ALJ's ruling became the final decision of the Commission.

Fama now petitions this Court for review. On appeal, it ob-jects to the validity and application of OSHA's multi-employer pol-icy. It also argues that it would be economically infeasible for it to enforce compliance with OSHA's requirements.

After careful review and with the benefit of oral argument, we deny Fama's petition and affirm the Commission's final decision. Fama failed to raise its objections to the multi-employer policy before the Commission such that, pursuant to the statute that gives us jurisdiction to review its petition, we cannot review these objections. Fama also failed to carry its burden to demonstrate that enforcing OSHA's safety requirements is economically infeasible.

## I. BACKGROUND

Fama held the exclusive roofing contract for the townhome development Riley Place in Dawsonville, Georgia. It subcontracted with a group of roofers to complete this project. Fama had worked with these subcontractors for more than ten years.

In March 2019, an OSHA inspector drove past the Riley Place jobsite and observed a worker moving shingle packets on the roof with no fall protection. The inspector investigated the jobsite and observed another worker operating a shingle elevator from the ground with no hardhat. The inspector recognized two of the roofers, and after speaking with the roofers and other contractors on site, the inspector confirmed that the workers were associated with Fama.

OSHA then issued Fama two citations for workplace safety violations. The first citation charged that Fama failed to initiate and maintain programs that provide for frequent and regular inspections of the jobsite, in violation of 29 C.F.R. § 1926.20(b)(2), and failed to require employees working in potentially dangerous areas to wear hard hats, in violation of 29 C.F.R. § 1926.100(a). The

second citation charged that Fama committed a repeat violation by failing to provide adequate protection to employees working at heights in residential construction projects, in violation of 29 C.F.R. § 1926.501(b)(13).

Fama has a history of citations for similar violations. OSHA had previously inspected Fama worksites at least seven times and issued a fall protection violation each time. Two previous citations resulted in a proceeding before the Commission and an appeal to this Court. *Fama Constr., LLC v. U.S. Dep't of Lab.*, No. 19-13277, 2022 WL 2375708, at *2–3 (11th Cir. June 30, 2022) (unpublished). Fama resolved some of these citations through settlement agreements in which it agreed to improve worker safety and conduct more frequent inspections of its projects. *Id.* at *3, *5.

Fama challenged the Riley Place citations before an ALJ. After discovery, the Secretary moved for summary judgment. The Secretary argued that Fama was a controlling employer pursuant to the OSHA multi-employer policy. OSHA's multi-employer policy dictates which employers can receive a citation from the agency for unsafe work conditions when more than one employer is responsible for the employees and the jobsite. *See* OSHA Instruction CPL 02-00-124, Multi-Employer Citation Policy § X.A (Dec. 10, 1999). A "controlling employer" is one "who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them." *Id.* § X.E.1. Under this rule, a controlling employer must "exercise reasonable care to prevent and detect violations on the

site." *Id.* § X.E.2. The Secretary asserted that Fama failed to meet its obligations as a controlling employer because it had knowledge of its subcontractor's violations but took no action to address workplace safety.

In response, Fama raised a host of objections challenging the applicability of the multi-employer policy. It mounted arguments that the policy was legally flawed, including that the policy was an invalid interpretation of the Occupational Safety and Health Act, impermissibly amended without notice and comment proceedings in violation of the Administrative Procedure Act, and unconstitutionally vague and unreasonable. Fama also contended that, as a subcontractor, it should not be considered a controlling employer, as that definition better fits a general contractor who is in the best position on a jobsite to correct workplace safety issues. It lastly raised an economic infeasibility defense, arguing that compliance with the OSHA regulations would require it to hire an onsite supervisor at a cost of $50,000 a year, which would eclipse the profits Fama made in each of the three years before the citation.

The ALJ granted summary judgment to the Secretary. He concluded that Fama was a controlling employer because its owners admitted in their depositions that they had the authority to stop unsafe work conditions and remove roofers from the jobsite. The ALJ further determined that Fama failed to meet its responsibilities as a controlling employer because it did not dispute either that these violations occurred or that it took no action to address workplace safety. The ALJ also rejected Fama's economic infeasibility

defense. Despite Fama's contention that it could not afford to hire a supervisor to ensure its subcontractors complied with OSHA requirements, the ALJ determined that Fama failed to carry its burden to prove this affirmative defense because Fama provided no proof that it would have needed to hire new personnel to comply with OSHA regulations.

Fama next filed a petition for discretionary review with the Commission. Unlike before the ALJ, it raised only a single argument regarding the multi-employer policy—that Fama should not be considered a controlling employer because it was a subcontractor, not a general contractor. Fama likewise reasserted its economic infeasibility defense.

The Commission affirmed the ALJ's conclusion that Fama was a controlling employer but rejected his other legal conclusions. The Commission determined that the ALJ had applied the incorrect legal framework, holding Fama to the duties of an employer who exposed its own employees to workplace hazards rather than to the duties of a controlling employer who had the authority to correct workplace safety hazards. *See* OSHA Instruction CPL 02-00-124, Multi-Employer Citation Policy §§ X.C.1, X.E.1 (Dec. 10, 1999). It likewise concluded that the ALJ had misapplied the summary judgment standard when evaluating Fama's economic infeasibility defense. The Commission therefore remanded the case to the ALJ to reconsider these two issues under the proper standards.

On remand, the ALJ again granted summary judgment to the Secretary. Reviewing Fama's duty as a controlling employer

under the correct standard—whether Fama took reasonable steps to prevent or detect and abate OSHA violations—the ALJ readily concluded that Fama breached this duty because it took no action to address workplace safety. The ALJ also reassessed and rejected Fama's infeasibility defense under the summary judgment standard as applied to affirmative defenses. He concluded that the Secretary demonstrated that there were no questions of material fact regarding Fama's economic infeasibility defense because Fama presented no evidence regarding whether there were alternative means to ensure that its subcontractors complied with safety regulations.

Fama then filed a second petition for discretionary review before the Commission. This petition did not address the application of the multi-employer policy, however. Fama instead attempted to incorporate its previous arguments by reference, stating, "For the reasons briefed throughout all prior stages of this dispute, Fama restates here its objection to the decision that it was a controlling employer at the jobsite." 11th Cir. Doc. 35 at 11.[1] It then reasserted its arguments regarding the infeasibility defense.

The Commission declined review, and the ALJ's order became the final order of the Commission. Fama then filed a petition for review in our Court.

## II. STANDARD OF REVIEW

Our standard of review is established by statute. *See* 29 U.S.C. § 660. "On review, Commission decisions are entitled to

---

[1] "11th Cir. Doc." numbers refer to our Court's docket entries in this appeal.

considerable deference." *Quinlan v. Sec'y, U.S. Dep't of Lab.*, 812 F.3d 832, 837 (11th Cir. 2016). The Commission's findings of fact, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 29 U.S.C. § 660(a). "[S]ubstantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Fluor Daniel v. Occupational Safety & Health Rev. Comm'n*, 295 F.3d 1232, 1236 (11th Cir. 2002) (citation modified). "The substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Stone & Webster Constr., Inc. v. U.S. Dep't of Lab.*, 684 F.3d 1127, 1133 (11th Cir. 2012) (citation modified). The Supreme Court has explained that 5 U.S.C. § 706 "mandate[s] that judicial review of agency policymaking and factfinding be deferential," but "it prescribes no deferential standard for courts to employ in answering" questions of law. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024).

## III. DISCUSSION

We divide our analysis of Fama's appeal into two parts. First, we explain that Fama failed to preserve for appeal its objections other than its economic infeasibility defense. Second, we reject that defense because Fama failed to demonstrate that compliance with the violated safety standards was infeasible.

### A.    Appellate Review

The Occupational Safety and Health Act establishes our authority to review direct appeals of final decisions of the

Commission. *See* 29 U.S.C. § 660(a). That statute enables a party to seek review of "an order of the Commission . . . in any United States court of appeals for the circuit in which the [OSHA] violation is alleged to have occurred." *Id.* Congress expressly limited our scope of review, mandating that "[n]o objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *Id.* Relying on this provision, our predecessor court concluded that "Section 660(a) precludes judicial review of issues not urged before the Commission; it does not mention the Commission's administrative law judges." *McGowan v. Marshall*, 604 F.2d 885, 890 (5th Cir. 1979).[2] Therefore, issues raised before an ALJ but not the Commission cannot be reviewed by this Court except in extraordinary circumstances. *Id.*

On appeal, Fama raises the following objections to the validity of OSHA's multi-employer policy: the policy is an impermissible interpretation of the duties of employers as defined by the Occupational Safety and Health Act, the policy was improperly modified without notice and comment as required by the Administrative Procedure Act, OSHA's definition of a controlling employer is unconstitutionally vague, and OSHA's enforcement of the policy is arbitrary and unreasonable. Fama also disputes the application of the policy to subcontractors rather than general contractors on a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

multi-employer jobsite. In addition to these challenges to the multi-employer policy, Fama raises an economic infeasibility defense, arguing that the cost of complying with the OSHA regulations at issue would force it out of business.

The record demonstrates that Fama raised these objections before the ALJ but failed to raise them in its petition for discretionary review before the Commission. Fama initially raised the objections to the multi-employer policy before the ALJ and relied on the same arguments at summary judgment that it asserts on appeal. The ALJ granted summary judgment to the Secretary, concluding that Fama was a controlling employer pursuant to OSHA's multi-employer policy. In response, Fama filed a petition for discretionary review before the Commission, raising only one of its objections to the multi-employer policy—that it should not be considered a controlling employer because it was a subcontractor rather than a general contractor. The Commission granted discretionary review, reversing and remanding in part because the ALJ had applied the wrong legal standards. On remand, the ALJ granted summary judgment again, applying the standards dictated by the Commission and determining that Fama was liable as a controlling employer. Fama then filed the petition for discretionary review before the Commission at issue in this appeal. In this petition, Fama raised none of its objections to the multi-employer policy. Instead, it attempted to incorporate its previous objections by reference, stating, "For the reasons briefed throughout all prior stages of this dispute, Fama restates here its objection to the decision that it was a controlling employer at the jobsite." 11th Cir. Doc. 35 at 11.

Fama's second petition to the Commission failed to properly raise its objections to the multi-employer policy. The Commission's regulation on petitions states that "[a] petition shall not incorporate by reference a brief or legal memorandum." 29 C.F.R. § 2200.91(d). Because Fama raised its objections to the multi-employer policy only by reference to its earlier briefing, it did not comply with this regulation and thus failed to assert its objections before the Commission.

Pursuant to 29 U.S.C. § 660(a), we cannot review the objections not raised before the Commission. That Fama raised the objections before the ALJ does not alter our conclusion. Section 660(a) requires that objections be raised before the Commission, and the statute "does not mention the Commission's administrative law judges." *McGowan*, 604 F.2d at 890. Therefore, an objection raised before the ALJ but not the Commission cannot be considered by the court. 29 U.S.C. § 660(a).

Furthermore, Fama does not raise any extraordinary circumstances that would allow us to review these objections, and we see none. Section 660(a) contains an exception that allows a federal court of appeals to consider objections a party failed to raise before the Commission in the case of "extraordinary circumstances." But no such circumstances are present here because this is the second time Fama has attempted to bring unpreserved objections to OSHA's multi-employer policy before this Court. *See Fama*, 2022 WL 2375708, at *4. We previously concluded that Fama failed to raise similar arguments regarding the multi-employer citation

policy before the Commission. *Id.* We issued that opinion before Fama filed the petition at issue here. Fama therefore had the benefit of our opinion putting it on notice to raise its objections before the Commission. But Fama, represented by the same counsel, failed to do so once again.

In contrast, Fama preserved its economic infeasibility defense. It raised this objection in its petition before the Commission. After the Commission declined to review the petition, the ALJ's order became the final order of the Commission. *See* 29 U.S.C. § 661(j); 29 C.F.R. § 2200.90(f). Fama then appealed this objection to our Court. Our review is therefore limited to Fama's economic infeasibility defense.

## B.    Economic Infeasibility

Fama argues that it is economically infeasible for it to comply with the OSHA safety regulations requiring its subcontractors to use fall protection when working on rooftops and hardhats when working on the ground. It says that the only means to enforce these safety protocols is to hire supervisors to monitor its subcontractors. And Fama contends that hiring a single supervisor at a cost of $50,000 a year would exceed its annual profits and drive it out of business.

To establish economic infeasibility, the employer must prove: "(i) that compliance with a particular standard either is impossible or will render performance of the work impossible; and (ii) that it (the employer) undertook alternative steps to protect its workers (or that no such steps were available)." *Harry C. Crooker &*

*Sons, Inc. v. Occupational Safety & Health Rev. Comm'n*, 537 F.3d 79, 82 (1st Cir. 2008); *see also A.J. McNulty & Co., Inc. v. Sec'y of Lab.*, 283 F.3d 328, 334 (D.C. Cir. 2002) ("Although it is an affirmative defense to a charge of violating an OSHA standard that compliance was impossible or infeasible, an employer mounting such a defense must show not only the infeasibility of compliance, but also that it either used alternative means of protection or that such means were infeasible." (citation modified)). Economic infeasibility is an affirmative defense, and "the employer must shoulder the burden of proving each of these elements." *Crooker & Sons*, 537 F.3d at 82; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that at the summary judgment stage the moving party's burden is met by pointing out "that there is an absence of evidence to support the nonmoving party's case"); *McElroy by McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1507 n.4 (11th Cir. 1990) (explaining that a defendant cannot prevail on an affirmative defense at summary judgment if it offers no evidence of an element of the defense).

As to the first element, Fama must show that the workplace safety requirements are economically or technologically infeasible. *Gregory & Cook, Inc.*, 17 BNA OSHC 1189, 1995 WL 242603, at *2 (No. 92-1891, 1995). Fama can meet this burden by demonstrating that "the means of compliance prescribed by the applicable standard would have been infeasible, in that (a) its implementation would have been technologically or economically infeasible or (b) necessary work operations would have been technologically or economically infeasible after its implementation." *Id.* (citation

omitted). To satisfy the second element, Fama must show that it used alternative means of protection or prove that "such means were infeasible." *A.J. McNulty & Co.*, 283 F.3d at 334. Because Fama bears the burden of proving the infeasibility of alternative methods, it cannot meet the second element if alternative methods of protection have been proffered, but Fama has not addressed them. *See id.* (rejecting a construction company's infeasibility defense when it had addressed the infeasibility of one type of guardrail but had not disputed testimony that a different type of guardrail would be feasible). Fama failed to carry its burden as to either element of the defense.

On the first element, Fama argues that it would be economically infeasible to maintain inspection programs, implement the use of fall protection equipment, and require workers to wear hardhats because the only method of ensuring compliance would be to hire a supervisor. From there, it argues that the cost of that supervisor would be economically unfeasible, providing its tax returns for the three years preceding the citations for support. But Fama's argument rests on the premise that compliance with the safety standards would require it to hire a supervisor. Fama offered no evidence that the *only* way to comply with the requirements would be to hire a supervisor.

On the second element, Fama failed to prove that it implemented alternative means to ensure worker safety or that any alternative means would be infeasible. Fama argues that its evidence of the economic infeasibility of hiring a supervisor also satisfied its

burden of proving that it considered alternative means and none was feasible. But this argument fails ultimately for the same reason as its argument on the first element. It is undisputed that Fama took no alternative steps to ensure that its subcontractors were abiding by OSHA safety standards, despite its knowledge that the same subcontractors had violated these safety standards previously. And because Fama offered no evidence that hiring a supervisor was the *only* means of meeting the safety requirements, it did not carry its burden to show that there were no feasible alternative means.

## IV. CONCLUSION

We cannot review Fama's objections to OSHA's multi-employer policy because Fama did not raise them before the Commission. And although it raised its affirmative defense of economic infeasibility before the Commission, it failed to carry its burden on either element of the defense.

Fama's petition for review is therefore **DENIED**, and the Commission's final decision is **AFFIRMED**.